ECF

ORIGINAL

FILED
OCT 3 2003
U.S. COURT OF FEDERAL CLAIMS

UNITED STATES COURT OF FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * *
JOHN E. MCCAFFERTY, D/B/A *
CLASSIC CATERING
PLAINTIFF *
*
VS. * CIVIL ACTION
* NO. 03-2292C
R.L. BROWNLEE, ACTING SECRETARY, *
DEPARTMENT OF THE ARMY, *
DEFENDANT *
* * * * * * * * * * * * * * * * * *

**COMPLAINT**

The Plaintiff, John E. McCafferty, d/b/a Classic Catering, alleges as follows:

**NATURE OF ACTION**

1. This is a civil action by the Plaintiff brought against R.L. Brownlee, Acting Secretary, Department of the Army ("Army" or "Defendant") seeking damages for the breach of contract between the Plaintiff and Defendant and other damages.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the matters herein and the parties hereto pursuant to 28 U.S.C. §1491(a)(1), as the is an agency of the United States of America.

3. The venue of this Court is proper pursuant to 28 U.S.C. §1491(a)(1) and 41 U.S.C. §609.

**PARTIES**

4. The plaintiff, John E. McCafferty, d/b/a Classic Catering

(hereinafter the "Plaintiff" or "McCafferty"), is an adult citizen of Massachusetts, residing at 67 Whitney Avenue, Lowell, Middlesex County, Massachusetts.

5. Defendant, R.L. Brownlee, Acting Secretary, Department of the Army (hereinafter "Defendant" or "Army"), is an agency of the United States Government, with a main office at In Washington, D.C..

**FACTS**

6. At all times herein mentioned the Plaintiff McCafferty owned and operated a food service business known as Classic Catering, with a specific address of 67 Whitney Avenue, Lowell, Massachusetts.

7. At all times herein mentioned the Plaintiff was in the business of providing food service and catering service to individual, corporate and governmental agencies.

8. At all times herein mentioned the Department of the Army operated a military facility located at Devens, Massachusetts, known as the Devens Reserve Forces Training Area ("RFTA").

9. At all times herein mentioned the purpose of the RFTA was to provide a facility and training areas for the training of personnel of the United States Army Reserve, National Guard and other military services.

10. At all times herein mentioned the RFTA was operated by a small Headquarters force of United States Army active duty personnel and United States Army and Department of Defense

("DoD") civilian personnel which operated and maintained the actual RFTA facilities and provided logistical support for the training military personnel.

11. On or about October 1, 1999, the Plaintiff and the Devens RFTA Contracting (" RFTA Contracting"), a department within the Devens RFTA Headquarters garrison, entered into a one (1) year Contract for the purposes of the Plaintiff be awarded a concession to operate a food and beverage facility within the Devens RFTA for the benefit of the Devens RFTA full-time personnel as well as the military personnel training there ("Contract"). The contract also awarded the Plaintiff the right to provide food service support and catering services to military personnel training there during drill weekends ("IDT") and active duty training periods ("AT" or "ADT"). A true and correct copy of the contract is attached to this Complaint and incorporated by reference in it as Exhibit "A".

12. On or about December 6, 2000, the Plaintiff and RFTA Contracting executed a Modification of the Contract. The primary modification was that the original contract was extended termination date was extended from October 1, 2000 until September 30, 2004. A true and correct copy of the contract is attached to this Complaint and incorporated by reference in it as Exhibit "B".

13. Among other things, as part of this contract, the Plaintiff was granted a license for concession services and was

allowed to operate a restaurant, function facility and bar known as the Minuteman Tavern ("Minuteman") in one of the buildings owned and controlled by the Devens RFTA.

14. Pursuant to same the Plaintiff and the Defendant entered into a lease for the building identified as Building 623 located within the Devens RFTA property where the Minuteman Tavern would be located. A true and correct copy of this contract is attached to this complaint and incorporated by reference in it as Exhibit "C".

15. Among other things, as part of this contract, the Plaintiff agreed to do the following:

(a) maintain and operate a restaurant and pub for specified days and hours per week and provide food and beverages to military and civilian customers;

(b) provide a facility for functions to be conducted by various military or DoD related groups in the Minuteman Tavern and provide food and beverage services if requested;

(c) maintain the physical facilities according to the prescribed contract;

(d) maintain and operate a pub in the afternoon and evenings for the military and civilian customers; and,

(e) provide food service and catering service, either within the Minuteman Tavern or other locations within the Devens RFTA, to military personnel training at the facility.

16. In return for being awarded this food and beverage

concession, the Plaintiff agreed to pay the Defendant a fee of seven and one-half (7½%) percent of the Plaintiff's gross sales, on a monthly basis.

17. The Plaintiff had been duly performing all of the terms and conditions of the contract on his part.

**COUNT I**

**BREACH OF CONTRACT**

18. The Plaintiff repeats and revers the allegations contained in Paragraph 1 through 17 above and incorporate the same herein by reference.

19. The Plaintiff's food and beverage service was located at Bldg. 623. The Plaintiff rented said facility from Devens RFTA. McCafferty's responsibilities for the maintenance of the building were limited to maintaining it in broom clean condition. He was not responsible for any major repairs or maintenance. That was the responsibility of the Department of Public Works ("DPW"), a division of the Devens RFTA.

20. Prior to March 2, 2001, McCafferty had made a number of complaints to the DPW representatives regarding the poor conditions of the floors and the fact that they needed to be completely redone. He never received any satisfaction or a satisfactory response from same.

21. McCafferty has been subjected to numerous inspections by the Food Service/Medical personnel and always received a satisfactory inspection.

22. McCafferty had been contracted by the Installation Services Officer of Devens RFTA ("ISO") to provide meals for various US Army reserve units that would be billeting/training at the Devens RFTA during the month of March, 2001.

23. This was the standard procedure that had been in operation between McCafferty and the ISO both prior to and subsequent to the incidents in question.

24. On 2 March 2001, McCafferty was advised by the then Installation Commander and/or his representative of the Devens RFTA he was immediately prohibited from serving meals to the Reservists at the mess facility due to alleged unsatisfactory floors. The problems with the floors were not related to the cleanliness of the floors nor to any condition that McCafferty was required to maintain the floors in, but rather to the general poor condition of the floor which McCafferty had been repeatedly trying to get DPW to fix.

25. The Plaintiff was never provided with anything in writing detailing either the suspension of food service or the reasons for same. Further, there has never been a Food Service and/or Medical inspection of the mess facility to substantiate the allegations regarding the condition of the floors by the US Army or that they were the fault of the Plaintiff.

26. The Plaintiff had already purchased the necessary foods and related materials to be served and/or utilized for the pending meals and hired the personnel to both cook and serve

same.

27. The Plaintiff was not given any advance notice of this suspension but advised that the suspension was immediate.

28. This action by the Devens RFTA on behalf of the Defendant was a breach of the food service contract by the DRFTA and caused immediate and material harm to McCafferty.

29. There was no viable or supported basis for this breach.

30. As a result of the illegal and unauthorized actions by the Devens RFTA, the Plaintiff lost the contract for the serving of meals for the period 2 March 2001 - 24 March 2001. The Plaintiff has incurred out-of-pocket expenses for the food and other materials that he had already purchased as well as monies that he had advanced for his employees.

31. The Plaintiff also lost his profit from that cancellation as well as lost profits for subsequent contracts during this period that he could not complete due to the actions of the US Army.

32. Any problems and/or deficiencies with the floors were not the responsibility of the Plaintiff but were the responsibility of the DPW Division of Devens RFTA and the Plaintiff should not be penalized for the DPW's failure to repair and/or correct.

33. The Plaintiff has demanded that the Defendant fulfill its obligations under the contract and make the Plaintiff whole, but the defendant has failed and refused and continues to fail

and refuse to do so.

34. As a result of said breach of contract, the Plaintiff has been damaged in the amount of $33, 557.05.

**COUNT II**

**BREACH OF CONTRACT**

35. The Plaintiff repeats and revers the allegations contained in Paragraph 1 through 17 and 19 through 34 above and incorporate the same herein by reference.

36. The Plaintiff was is the Lessee of the premises and building known as Building 623 ("P-623"), Devens Reserve Force Training Area pursuant to License No. DACA33-3-00-119 (the "Lease"), Exhibit "C". There is also a Solicitation, Offer and Award (Nonappropriated Funds) Contract No. NAFFE2-00-T-0001 dated 1 October 1999, extended pursuant to Amendment of Solicitation/Modification of Contract dated 6 December 00, Exhibits "A" & "B". At all times herein both the Lease and the Contract were in full force and effect.

37. Pursuant to said contracts Plaintiff operates, among other things, a food and beverage operation in said P-623 known as the Minuteman Tavern ("Tavern"). The Tavern used to operate seven (7) days a week and provided food, beverage, both alcoholic and non-alcoholic, and music to the personnel of the Devens RFTA, Reservists, National Guardsmen, and other individuals.

38. The Contract and the Lease, which incorporates the Contract, initially provided that access to the facilities of P-

623, to include the Tavern, were limited to: (1) All Federal civilian employees working at the DRFTA; (2) All uniformed (military) personnel; (3) Dependents and/or guests of military or civilian personnel; and, (4) individuals possessing a DOD identification card, Active, Reserve and retired and authorized dependents, see Paragraph C-12 of Exhibit "A".

39. From 2001 through February, 2002, the Devens RFTA Chain of Command had been aware of the shrinking base of authorized personnel who could use the facilities of P-623. Further, there had been discussions between military and civilian employees of the Devens RFTA and the Plaintiff regarding same and a need to insure that the Plaintiff could financially afford to maintain its operation.

40. As a result of same there were a series of verbal understandings/agreements between the Chain of Command of Devens RFTA and the Plaintiff, whereby the Plaintiff could seek to expand its customer base to maintain its financial viability.

41. This included significant advertising in the surrounding communities to attract the public to solicit and patronize the Tavern. This includes both radio and print advertising as well as the booking of bands to attract the general public.

42. This also provided a more entertaining and attractive setting/environment for the military personnel to patronize, especially during weekends. Due to the expenditures of

significant monies by the Plaintiff he started to increase his customer base and improve his financial viability in the operation of the Tavern.

43. The Tavern also provided a safe and secure environment within which both the Devens RFTA military personnel and the general public could enjoy themselves.

44. Prior to 4 February 2002, this enterprise was supported by the Chain of Command of Devens RFTA.

45. On or about 4 February 2002, Plaintiff was informed by the Commander, Devens RFTA, that he was going to reinstate the restricted access provision of the Contract to the Tavern, see attached Exhibit "D". This determination was made despite the fact that the Commander conceded in said letter that both he and "prior commanders" had allowed this expansion of the customer base authorized to patronize the Tavern. This also despite the fact that he either knew or should have known that the Plaintiff had expended significant amounts of money, time and energy to build up the customer base patronizing the Tavern.

46. Further, on or about 14 February 2002, the Plaintiff was informed by the Commander, DRFTA, that he was going to revert to the restricted access provisions of the Contract immediately.

47. This immediate restriction was allegedly based upon a recent incident involving two teenagers who were allegedly stopped on the Devens Business Park streets (but not inside the Devens RFTA military area) and found to have alcohol and

marijuana in their possession. Although there were no allegations that the two teenagers had been served at the Tavern, they allegedly made representations, although not contained in the official police report, that there were allowed into the9 premises.

48. Despite the protestations of the Plaintiff, personnel from Devens RFTA never follow up on said allegations. When McCafferty contacted the arresting State Police Officer, the arresting officer represented that he did not put that allegation in his police report because he did not find the two teenagers credible. Further, it had been previously conceded by law enforcement officials that the Plaintiff maintained a very strict process for the inspection and review of the age of customers before they are admitted to the Tavern. There had never been any previous complaint regarding the serving of underage individuals in the Tavern in almost two years.

49. This arbitrary and capricious restriction of access had a devastating impact upon the Plaintiff's business operation.

50. This was a significant modification to the modified contract which was taken without any reasonable notice to the Plaintiff and without any reasonable compensation being offered.

51. As a result of this draconian action, the Plaintiff's monthly income has plummeted from more than $15,000.00 to less than $3,000.00 since the imposition of the restriction on access.

52. As such, the Plaintiff suffered damages in the amount of

$12,000.00 per month since 4 February 2002. Further, said damages were ongoing until the Contracting Officer for Devens RFTA advised the Plaintiff by letter dated 30 October 2002, a copy of which is attached as Exhibit "E", that the Plaintiff's contract was being terminated pursuant to the applicable termination by agreement provisions of the contract.

53. Finally, and contrary to the representations of the Devens RFTA, there was only a selective enforcement of access restriction to P-623. Despite the fact that since 22 February 2002, access to the facilities of PP-623 operated by the Plaintiff, to include the Tavern, had been restricted to personnel as outlined in paragraph C-12 of the Contract, and the Devens RFTA Provost Marshal's Office have posted signs on the building regarding same, the Post Commander allowed a at least civilian organization to use P-623 for a flea market during a weekend in March, 2002. The majority of the customers to said flea market were non-DOD personnel who would have not been authorized to use the facilities for a Plaintiff sponsored event, but which were authorized to use the facilities for a non-Plaintiff sponsored event, and were even provided their own keys to open and close the building.

54. The Plaintiff has demanded that the Defendant fulfill its obligations under the contract and make the Plaintiff whole for its arbitrary and capricious actions in suddenly restricting access but the defendant has failed and refused and continues to

fail and refuse to do so.

55. As a result of said breach of contract, the Plaintiff has been damaged in the amount of at least $144,000.00.

**PRAYER**

WHEREFORE the Plaintiff, John E. McCafferty d/b/a Classic Catering, prays for judgment as follows:

1. Enter judgment in favor of the Plaintiff and against the Defendant on Count I of the Complaint in an amount equal to Plaintiff's damages proved at trial, plus pre-judgment interest and costs.

2. Enter judgment in favor of the Plaintiff and against the Defendant on Count II of the Complaint in an amount equal to Plaintiff's damages proved at trial, plus pre-judgment interest and costs.

3. Reasonable Attorney's fees.

4. This Court award Plaintiff such further and other relief as the Court deems just and proper.

Respectfully submitted,
By his attorney,

MARK E. NESTOR, Esquire
BBO #369440
332 Lunenburg Street
Fitchburg, MA 01420
(978) 345-8034

Dated: September 4, 2003