ORIGINAL

FILED
MAR 9 2004
U.S. COURT OF
FEDERAL CLAIMS

**No. 03-2292C**
**Judge Braden**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**JOHN E. MCCAFFERTY, D/B/A**
**CLASSIC CATERING**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

---

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

MARK L. NESTOR, Esq.
332 Lunenburg Street
Fitchburg, MA 01420
Tel: 978.345.3544

February 20, 2004

Counsel for the Plaintiff

TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 3

ARGUMENT .......... 12

I.. Standard of Review .......... 12

II.. The Court Does Have Tucker Act Jurisdiction To Entertain Plaintiff's Claims for Relief .......... 13

III. The Plaintiff has stated Claims Upon Which Relief Can Be Granted .......... 18

A. Count I Of The Plaintiff's Complaint Does State A Claim For Relief And The Breach Of The Duty Owed By The Government .......... 18

B. The Plaintiff Has In Fact Alleged The Elements Of An Implied-In-Fact Contract And, As Such, Has Stated A Claim Upon Which Relief Can Be Granted .......... 19

IV. The Plaintiff Should Be Allowed To Proceed With His Claims Under The Doctrine Of Implied Covenant Of Good Faith .......... 22

CONCLUSION .......... 23

# TABLE OF AUTHORITIES

PAGE(S)

CASES:

A. L. Rowan & Son, General Contractors Inc. v. Department of Housing and Urban Development, 611 F. 2d 997 (5th Cir. 1980) ........................ 12

Aaron v. United States, 27 Fed. Cl. 295 (1992)..... 15

Baltimore & Ohio R.R. v. United States, 261 U.S. 592, 43 S. Ct. 425 (1923)................. 17

Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773 (1946)... 13

Breitbeck v. United States, 500 F.2d 556 (Fed. Cir. 1974)................................... 13, 14

City of El Centro, 922 F. 2d. 816 (Fed. Cir. 1990)................................... 18

Convery v. United States, 597 F.2d 727 (Fed. Cir. 1979)................................... 14

DeMauro Construction Corp. v. United States, 568 F.2d 1332 (Fed. Cir. 1978)..................... 14

Do-Well Machine Shops, Inc. v. United States, 870 F.2d 637 (Fed. Cir. 1989)...................... 14

Eliel v. United States, 18 Cl. Ct. 461 (1989)...... 22

Garita Hotel Limited Partnership v. Ponce Federal Bank, 958 F.2d 15 (1st Cir. 1992).................. 12

Gould v. United States, 67 F.3rd 925 (Fed. Cir. 1995)..................................... 12

Hamlet v. United States, 873 F.2d 1414 (Fed. Cir. 1989). ................................. 13

Hercules v. United States, 516 U.S. 417, 116 S. Ct. 981 (1996)............................ 15, 21

Kyer v. United States, 369 F.2d 714 (Fed. Cir. 1966), cert. den. 387 U.S. 929.......... 87 S. Ct. 2050 (1967)............................ 14

L'Enfant Plaza Properties, Inc. v. United States
668 F.2d 1211 (1982)............................... 14

Maher v. United States, 314 F.3d 600 (2002)........ 17

National By-Products v. United States,
405 F.2d 1256 (Fed. Cir. 1969)..................... 18

New American Shipbuilders v. United States,
871 F. 2d 1077 (Fed. Cir. 1989).................... 17

Ponder v. United States, 117 F. 3d. 549
(Fed. Cir. 1997.................................... 13

Regional Rail Reorganization Cases, 419 U.S. 102,
95 S. Ct. 335 (1974)............................... 14

Reynolds v. Army & Air Force Exchange Service,
846 F.2d 746 (Fed. Cir. 1988)...................... 13

Russell Corporation v. United States, 537 F.2d
474 (Fed. Cir. 1976)............................... 15

Spruill v. Merit System Protection Board, 978
F.2d 679 (Fed. Cir. 1992).......................... 13, 14

Trauma Service Group v. United States, 104 F.3d
1321 (Fed. Cir. 1997).............................. 13

United States v. Mitchell, 463 U.S. 206,
103 S. Ct. 2961 (1983)............................. 15, 17

5 WILLISTON ON CONTRACTS, THIRD EDITION §670 (1961). 22

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOHN E. MCCAFFERTY, D/B/A CLASSIC CATERING, PLAINTIFF, | * | NO. 03-2292C (JUDGE BRADEN) |
| V. | * | |
| THE UNITED STATES, DEFENDANT, | * | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Now comes the Plaintiff, John E. McCafferty, d/b/a, Classic Catering ("Plaintiff" or "Classic Catering"), in the above entitled matter and objects to the Defendant, The United States ("Defendant" or "United States") Motion to Dismiss the Plaintiff's Complaint pursuant to the provisions of Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for either lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. In support of said Opposition, the Plaintiff relies upon his compliant and its attachments, the following brief, and the attached Affidavit of John E. McCafferty.

**STATEMENT OF THE ISSUES**

(1) Whether the non-appropriated funds doctrine serves as a jurisdictional bar to this Court's authority to entertain plaintiff's complaint.

(2) Whether an implied-in-fact contract supersedes the jurisdictional bar for the Court's authority to entertain a complaint regarding non-appropriated funds.

(3) Whether, if the Court has subject matter jurisdiction, the Complaint has stated claims upon which relief can be granted.

(4) Whether at least a portion of the Plaintiff's Complaint deals with appropriated funds and hence jurisdiction is granted to this Court.

(5) Whether the Plaintiff should be allowed to pursue his claims under the Doctrine of Implied Covenant of Good Faith.

(6) Whether, based upon all of the pleadings submitted by the Plaintiff, the Plaintiff should be allowed to amend his Complaint as a matter of course, to include all the assertions and allegations contained within the Plaintiff's initial and subsequent pleadings.

**STATEMENT OF THE CASE**

On October 3, 2003, John E. McCafferty, d/b/a Classic Catering, filed a Complaint ("Com") against the United States with this Court, alleging two separate counts of breach of contract. Count One of the Plaintiff's complaint provides that the Government breached its contract with plaintiff by refusing, with no advance notice, to allow plaintiff to serve meals in his dining room facility to United States Army Reservists, United States Army National Guard, and other military personnel that he

had contracted with to provide food service support to in March 2001. Count Two of plaintiff's complaint asserts that the Government breached implied-in-fact contracts with plaintiff by enforcing access restriction of certain personnel to his tavern facility that they had previously agreed to allow.

On or about October 1, 1999, the Plaintiff and the Devens RFTA Civilian Welfare Fund Council ("Devens RFTA CWFC"), a department within the Devens RFTA Headquarters garrison, entered into a one (1) year Contract for the purposes of the Plaintiff being awarded a concession to operate a food and beverage facility within the Devens RFTA for the benefit of the Devens RFTA full-time personnel as well as the military personnel training there ("Contract"). The contract also awarded the Plaintiff the right to provide food service support and catering services to military personnel training there during drill weekends ("IDT") and active duty training periods ("AT" or "ADT") Com ¶11, and Affidavit of John E. McCafferty dated February 18, 2004, ("Aff") ¶13. This contract was subsequently modified on December 6, 2000, to extend the termination date an additional three (3) years. Com ¶12, Aff ¶14. This lease enabled the Plaintiff to operate a food service business known as Classic Catering. Classic Catering was operated on the United States Army Installation known as Devens Reserve Forces Training Area ("Devens RFTA") located at Devens, Massachusetts. Classic

Catering was to be able to provide meals to military personnel, primary Guard and Reserve, that were training at Devens RFTA as well as operate an entity known as the Minuteman Tavern, Com ¶13. The Minuteman Tavern was operated primarily as: a restaurant serving military and civilian personnel meals on a daily basis; providing a facility for functions, meetings and banquets; and, providing a bar which served alcoholic beverages, light meals and provided games, Aff ¶9. All of these functions of Classic took place in Building 623 which was located on the Devens RFTA and was leased to the Plaintiff by the Devens RFTA, Com ¶14. The Devens RFTA was a Department of Army military installation located at the former site of Fort Devens. The Devens RFTA essentially provided a facility and training areas for the training of personnel of the United States Army Reserve, Army National Guard and other military services. Com ¶¶8-9, Aff ¶¶4, 10. Most of the training of the Reserve and Guard components was their monthly weekend drill assemblies. Devens RFTA was operated by a small Headquarters force of United States Army active duty personnel and United States Army and Department of Defense ("DoD") civilian personnel which operated and maintained the actual Devens RFTA facilities and provided logistical support for the training military personnel. Com ¶10, Aff ¶12. In return for providing certain food and beverage services to the personnel of the Devens RFTA, as well as its supported units and military

personnel, the Plaintiff was required to pay a negotiated percent of its gross income to Devens RFTA CWFC, namely seven and one-half (7½ %) percent, Com ¶16, Aff ¶17. The Devens RFTA CWFC office and its contracting officer was ultimately under the supervision of the Commanding Officer of the Devens RFTA, an active duty United States Army Officer, normally a Lieutenant-Colonel ("LTC")(O-5), Aff ¶19.

In regards to Count I of the Complaint, the Plaintiff also provided food service support and catering services to military personnel, primarily United States Army Reserve ("USAR") or Army National Guard ("ARNG") personnel training there during drill weekends ("IDT") and active duty training periods ("AT" or "ADT"). The Plaintiff's point of contact for the contracting for the providing of meals for these personnel during these training periods was the Devens RFTA Installation Services Officer ("ISO") who was also ultimately under the supervision of the Commanding Officer of the Devens RFTA, Aff ¶¶20-22. The Plaintiff I would contract with the Devens RFTA for the operation of the basic restaurant, proving food and beverage to functions, meetings and events at the Minuteman was well as well the sponsoring unit/department and would contract solely with the ISO for the providing of meals in the Minuteman Tavern for drilling reservists or guardsmen. The Plaintiff would also contract with the ISO for the providing of meals for drilling reservists and

guardsmen at other mess facilities that were maintained by the Devens RFTA for use by military units during training periods. Aff ¶¶ 24-26. Funding and payment to the Plaintiff for the catering and providing of meals for drill reservists or guardsmen came through what was called appropriated funds, and all bills for these services were forwarded to the ISO and payments received as a result of the authorization of the ISO, Aff ¶26 - 27. The contract with the Devens RFTA CWFC only required the Plaintiff to maintain the Minuteman Tavern facilities in "broom-clean" condition. The responsibility for other maintenance and repairs the Division of Public Works department of the Devens RFTA, Aff Com ¶19. In February, 2001, the Plaintiff had contracted with the ISO to provide certain food service support for a number of military units that would be training at the Devens RFTA in the March, 2001, time frame, Com ¶22, Aff ¶30-32. As a result of these contracts with the ISO the Plaintiff ordered additional foods, scheduled additional food servers and cooks to work and declined other contracts in order to be able to service these contracts, Com ¶26, Aff ¶33-34. On Friday afternoon, March 2, 2001, the Devens RFTA Commanding Officer, LTC John M. Otto, visited the premises and without notice ordered that no military personnel be fed at the Plaintiff's facility under certain repairs, which were not within the scope of the Plaintiff's contract, be performed, Com ¶¶ 24-25, ¶¶ Aff 35-42. As a result

of the actions of the Commanding Officer the Plaintiff was forced to contact the contracted units and advise them that the Plaintiff would be unable to provide food service support either for that weekend or for subsequent weekends until the "repairs" were made, Com ¶¶ 30-31, Aff 44-45. Because of the uncertainty of the repairs, which would have to be performed by Devens RFTA personnel over which the Plaintiff had no control, the Plaintiff lost the remainder of the contracts because the units had to obtain alternative food service support contracts. Because the Defendant breached its contracts with the Plaintiff and refusing to allow the Plaintiff to provide food service support to the contracted military units, the Plaintiff submitted invoices to the ISO for his losses which were denied.

In regards to Count II, as part of the Plaintiff's contract with the Devens RFTA CWFC, the Tavern operated a seven (7) days a week and provided food, beverage, both alcoholic and non-alcoholic, and music to the personnel of the Devens RFTA, Reservists, National Guardsmen, and other individuals, Com ¶38. The Contract and the Lease, which incorporates the Contract, initially provided that access to the facilities of P-623, to include the Tavern, were limited to: (1) All Federal civilian employees working at the DRFTA; (2) All uniformed (military) personnel; (3) Dependents and/or guests of military or civilian personnel; and, (4) individuals possessing a DOD identification

card, Active, Reserve and retired and authorized dependents. However, from 2001 through February, 2002, the Devens RFTA Chain of Command had been aware of the shrinking base of authorized personnel who could use the facilities of P-623 and as a result of same, there had been discussions between military and civilian employees of the Devens RFTA and the Plaintiff regarding same and a need to insure that the Plaintiff could financially afford to maintain its operation, Com ¶¶ 38-39. Additionally, during the same time period, and in fact since the beginning of the contract, various Commanding Officers of the Devens RFTA used to utilize the Minuteman Tavern to host a number of functions to which the general public was invited. Among the Commanding Officers that did that were LTC Gracus Dunn and LTC John Otto. These functions would be either scheduled directly with the host entity or through the Contracting Officer. Depending on the source/sponsor of the event would determine who I would bill for both the use of the facility as well as well as for any food or beverage services provided. It is believed that the sources of these funds were different than the sources of the funds for the catering to military personnel on training exercises and/or drill weekends, Aff ¶¶ 52-53. Further, the Commanding Officers used to allow non military functions to utilize Building 623 and the Minuteman Tavern, Com ¶53, Aff ¶¶ 52-55. As a result of the concern regarding the Plaintiff being able to maintain the

facility successfully if he was limited to only allow the personnel listed in the contract to utilize his leased facilities at Building 623, there were a series of verbal understandings/agreements between the Chain of Command of Devens RFTA and the Plaintiff, whereby the Plaintiff could seek to expand his customer base to maintain the Minuteman Tavern's financial viability, Com ¶40. These efforts included significant advertising in the surrounding communities to attract the public to solicit and patronize the Tavern. This also included both radio and print advertising as well as the booking of bands to attract the general public, Com ¶41. As a result of same, a more entertaining and attractive setting/environment for the military personnel to patronize, especially during weekends. The expenditures of significant monies by Plaintiff resulted in an increase of the Plaintiff's customer base and improvement in the financial viability in the operation of the Tavern. Another benefit of these activities was that thee Tavern also provided a safe and secure environment within which both the Devens RFTA military personnel and the general public could enjoy themselves and minimize the risk of alcohol related incidents of military personnel if they were forced to travel off post on weekends to visit clubs and bars. Normally, most drilling reservists and guardsmen who trained at the Devens RFTA, especially for weekend drills, if they stayed overnight, were normally off-duty after 4-

5 p.m. each evening. After Fort Devens closed and the Devens RFTA was established there were very few, if any, on-post facilities that provided either food or beverage service, especially in the evening hours, Com ¶43, Aff ¶59. At least two Installation Commanding Officers both approved and supported these expanded activities of the Tavern and the Plaintiff relied upon this support as well as the communications with the other staff of the Devens RFTA in expending a significant amount of monies to upgrade the entertainment of the Tavern and the subsequent operation of same, Com ¶44, Aff ¶¶60-64. The Plaintiff believed, and his belief was supported by the military chain of command at the Devens RFTA, that the Plaintiff was providing a significant benefit/service to Devens RFTA and its training personnel and that the Devens RFTA benefitted by it. At no time did the Devens RFTA CWFC ever object to the expanded operation. It was only in February, 2002, the then Commanding Officer, without warning, informed the Plaintiff that the original restrictions were going to be re-established, Com ¶45, Aff ¶¶ 65-68. This notice was issued by the Commanding Officer of the Devens RFTA and not by the Devens RFTA CWFC, and also included a written acknowledgment regarding the prior arrangement, Com ¶45, Aff ¶66. The immediate and significant restriction on the Plaintiff's customer base was devastating to his business. This also appeared to be a the selective enforcement of access

restriction to P-623 since, after the notice was given to the Plaintiff, and despite the fact the Devens RFTA Provost Marshal's Office had posted signs on the building regarding same, the Commanding Officer allowed a civilian organization to use P-623 for a flea market during a weekend in March, 2002. The majority of the customers to said flea market were non-DOD personnel who would have not been authorized to use the facilities for an event sponsored by the Plaintiff, but which were authorized to use the facilities for an event sponsored by someone else, to include even being provided their own keys to the premises without approval of the Plaintiff, Com ¶53, Aff ¶¶ 72-73. The Plaintiff was damaged by this breach of the implied-in-fact contract.

## ARGUMENT

I. Standard of Review:

A motion to dismiss should not be granted unless it clearly appears, according to all of the facts alleged, that the Plaintiff cannot recover on any viable theory. Garita Hotel Limited Partnership v. Ponce Federal Bank, 958 F.2d 15, 17 (1st Cir. 1992). The Tucker Act, 28 U.S.C.A. §1491(a)(1), grants to this Court jurisdiction for claims against the United States founded upon: the Constitution; an Act of Congress; a regulation of an executive department; or, an express or implied contract. Gould v. United States, 67 F.3rd 925, 928 (Fed. Cir. 1995). See A. L. Rowan & Son, General Contractors Inc. v. Department of

Housing and Urban Development, 611 F. 2d 997, 999 (5th Cir. 1980). Breitbeck v. United States, 500 F.2d 556, 558 (Fed. Cir. 1974). It is conceded that the party invoking the jurisdiction of this Court has the burden to show compliance with the Tucker Act. Reynolds v. Army & Air Force Exchange Service, 846 F.2d 746, 748, (Fed. Cir. 1988). See Trauma Service Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997).

In its analysis of a defendant's motion to dismiss for lack of jurisdiction the court should accept the plaintiff's factual allegations as true, drawing all inferences in favor of the plaintiff. Ponder v. United States, 117 F. 3d. 549, 552 (Fed. Cir. 1997. Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989). Further, a well pleaded allegation is sufficient to overcome challenges to jurisdiction. Spruill v. Merit System Protection Board, 978 F.2d 679, 686 (Fed. Cir. 1992). See Trauma Service Group, 104 F.3d at 1324. Additionally, jurisdiction should not be defeated merely by the possibility that the averments might fail to state a claim upon which relief can be granted. Bell v. Hood, 327 U.S. 678,682, 66 S. Ct. 773, 777 (1946).

II. The Court Does Have Tucker Act Jurisdiction to Entertain Plaintiff's Claims for Relief.

The Tucker Act is a broad waiver of sovereign immunity granting jurisdiction to this Court over contract claims against

the Government. If the agency involved in the dispute operates as a governmental body and within its statutory authority, this court acquires jurisdiction absent a specific indication that Congress did not intend the agency to be covered. Regional Rail Reorganization Cases, 419 U.S. 102, 126, 95 S. Ct. 335, 349-350 (1974). Breitbeck, 500 F.2d at 210. Included within this broad jurisdiction are either express contracts are implied-in-fact contracts, and the breach of that contract. Do-Well Machine Shops, Inc. v. United States, 870 F.2d 637, 639-40 (Fed. Cir. 1989). See Spruill, 978 F.2d at 689.

The Government misinterprets both the Plaintiff's claims as well as whether this Court has jurisdiction. Clearly this Court has jurisdiction over cases in which appropriated funds can be obligated. Kyer v. United States, 369 F.2d 714, 718 (Fed. Cir. 1966), cert. Den. 387 U.S. 929, 87 S. Ct. 2050 (1967). L'Enfant Plaza Properties, Inc. v. United States, 668 F.2d 1211, 1212 (Fed. Cir. 1982). However, this Court has also held that it has jurisdiction over agencies that have not used appropriated funds for the activity that is dispute, but rather at Congress could appropriate funds if necessary. Convery v. United States, 597 F.2d 727, 730 (Fed. Cir. 1979), DeMauro Construction Corp. v. United States, 568 F.2d 1332, 1328, (Fed. Cir. 1978). Additionally, this Court has held that where an agency's activities receive both appropriated funds and non-appropriated

fund support the Nonappropriated funds doctrine does not apply. Aaron v. United States, 27 Fed. Cl. 295 (1992). Finally, this Court is empowered to maintain jurisdiction over contracts which are implied in fact. Russell Corporation v. United States, 537 F.2d 474 (Fed. Cir. 1976). U.S. 678, 682, 66 S. Ct. 773 (1946). United States v. Mitchell, 463 U.S. 206, 218, 103 S. Ct. 2961, 2968-2969 (1983). Hercules v. United States, 516 U.S. 417, 424, 116 S. Ct. 981 (1996).

The Plaintiff alleges in Count I of his complaint a breach of contract. The Plaintiff alleges that the contracts that were breached were contracts for the providing of food service support to military personnel on training periods at Devens. Com. ¶¶22-23 and Aff. ¶¶21-25. The breach that the Plaintiff suffered was due to the sudden and unexpected closure of his eating facility by the Post/Installation Commander just prior to a weekend when the Plaintiff had contracted to provide food service support to military personnel on an Inactive Duty Training Weekend ("IDT"). Com. ¶24, Aff. ¶¶30 & 37. As a result of this breach, the Plaintiff was unable to provide food service support for USAR and ARNG personnel not only for that drill weekend but he had to cancel the contracts in toto because it was unknown when he would re-open and the supported military units needed to have some assurances that they would be fed, which the Plaintiff could not give them. Com.¶¶30-31, Aff.¶¶45-46. The food service contracts

that the Plaintiff had were not directly related to his contract with the Devens RFTA CWFC, which was restricted to only provided a locale where he could provide food service report. These contracts met all of the requirements of express contracts and should be enforced. These military food service support contracts were related to his contracts with both the ISO as well as the individual military units. Com ¶22, Aff ¶¶21, 30-32. These were appropriated funds coming from Congressional appropriations which provided for the training and support of United States military personnel in IDT, ADT and AT military training exercises. Aff. ¶26. Contracting for this support did not emanate from or be processed through the Devens RFTA CWFC, but through the Devens RFTA ISO. Com ¶22, Aff ¶21. Nor were funds for this type of military support provided by the Devens RFTA CWFC. The Government would be hard pressed to assert that any type of core logistical support for military training exercises of any type or nature would fall under this purview. This was not a morale, welfare or recreation activity that might possibly not be covered by the provisions of the Tucker Act, but logistical support of military units in training exercises. These type of food service activities can in no way fall under a NAFI enterprise. Further, the Devens RFTA Commanding Officer, is the overall supervisor of the ISO, Aff ¶22. The dispute is not over whether there is an obligation of the Government to purchase

meals from the Plaintiff, the dispute is over the Government, through the office of the ISO, in fact contracting the meals from the Plaintiff and then taking actions to breach its contract for the provision of these meals.

Since Count I of the Plaintiff's Complaint clearly relates to appropriated funds activities, this Court clearly has jurisdiction over same.

In regards to Count II of the Plaintiff's Complaint, the Plaintiff asserts that this Court has jurisdiction under the doctrine of a contract implied-in-fact. The Plaintiff has clearly laid out in both his Complaint and Affidavit. As previously noted, this Court is authorized in 28 U.S.C. §1491(a)(1) "to render judgment upon any claim that is founded upon ... any express or implied contract". United States v. Mitchell, 463 U.S. 206, 103 S. Ct. 2961 (1983). To be an implied-in-fact agreement there must be a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, *from the conduct of the parties showing* (my emphasis), in the light of the surrounding circumstances, their tacit understanding. Baltimore & Ohio R.R. v. United States, 261 U.S. 592, 597, 43 S. Ct. 425, 426-427 (1923). Maher v. United States, 314 F.3 600, 604 ( C.A. Fed. 2002). Proof that can be presented in support of his claim can be circumstantial, New American Shipbuilders v. United States, 871 F. 2d 1077 (Fed. Cir. 1989),

and more than mere statements of opinion or prediction, National By-Products v. United States, 405 F.2d 1256, 1264 (Fed. Cir. 1969). The facts alleged by the Plaintiff in both his Complaint and Affidavit clearly demonstrate the necessary elements for a formation of a contract with the Government, namely, mutual intent to contract including an offer and acceptance, consideration and a Government representative who had authority to bind the Government. City of El Centro, 922 F. 2d. 816, 820 (Fed. Cir. 1990).

III. The Plaintiff has stated Claims Upon Which Relief Can Be Granted.

A. Count I of the Plaintiff's Complaint Does State a Claim for Relief and the Breach of the Duty Owed by the Government.

Contrary to the assertions of the Government the Plaintiff not only demonstrated that he had an enforceable express contract with the Government but that the Government breached its duty. For an express contract or an implied-in-fact contract to exist there must be three elements: (1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance. Without repeating the facts and arguments set out above, the Plaintiff would state: (1) the ISO contracted with the Plaintiff to provide food service support to training military personnel, Com ¶22 & Aff ¶¶ 30 & 32; (2) contracts were written, Ex. A & B to Aff; (3) there was consideration, Com ¶26,

Aff ¶31, Ex. A&B to Aff; and, (4) they were offered and accepted, Com ¶¶22 & 26, Aff ¶¶30,32,33. Further, in regards to the 4th requirement for an implied-in-fact contract, these contracts were initiated and/or processed through the ISO, Com ¶22, Aff ¶¶21,22,25 & 27. These were actual contracts between the Plaintiff and the Government, not just vague representations as asserted by the Government in its Motion. Additionally, and contrary to the representations of the Government, the then-Commander, not only prohibited any authorized patrons from utilizing the Plaintiff's facilities, he completely shut down the facilities without notice thus precluding any patron from being able to utilize the facilities, Com ¶24, Aff ¶37.

The Plaintiff has asserted from the beginning that the alleged "defect" in the floor in question was out of the scope of his responsibility and the Government has failed to identify that the alleged violation in question was under the responsibility of the Plaintiff to maintain. Further, and contrary to both the allegations as well as the supporting documents submitted, the Government has never held out the then-Commander as being qualified as a food service or medical sanitation expert. This was one of the prime objections to of the Plaintiff, that the then commander did not have this type of background and did not seek to have either his food service or medical sanitation staff members inspect the facility according to the applicable

regulations prior to unilaterally shutting it down.

This Count I is not brought because the Plaintiff is asserting that the Government had any contractual duty for reservists to purchase meals from his facility. This Count I is brought because the Government did in fact contract with the Plaintiff for the providing of food service support to reservists and then breached its contracts with the Plaintiff. The Government is under no obligation to strike a bargain with the Plaintiff, but the Government is clearly under an obligation to honor its contracts with the Plaintiff. In regards to Count I, the Government failed to do same, to the detriment of the Plaintiff.

B. The Plaintiff Has In Fact Alleged The Elements Of An Implied-In-Fact Contract and, As Such, Has Stated A Claim Upon Which Relief Can Be Granted.

The Plaintiff contends that he has set forth the necessary elements to support an implied-in-fact contract in regards to Count II of his Complaint. The Defendant was well aware that the population base of the RFTA facility was shrinking, Com ¶39, Aff ¶51 & 56. The Defendant was also aware that the Plaintiff had taken financial steps to expand his customer base, Com ¶¶ 41&42, Aff ¶¶57-58. Not only did the Government initially not order that these activities cease, but they condoned and supported these activities. Com ¶44, Ex. D to Com, and Aff ¶¶60, 61, 63-64. The same chain-of-command,

themselves also utilized the same facilities of the Plaintiff for functions that also included the self same prohibited personnel, Com ¶53, Aff ¶¶52-53, 73. Clearly the above amounted to a "meeting of minds" and/or "tacit Understanding" which therefore addresses the element of mutual intent to contract and an offer and acceptance. Hercules, 516 U.S. at 421. There was consideration on both sides of this arrangement. The Plaintiff was able to revive his struggling business financially, increased his gross income with the resultant increase in the contracted payments to the CWFC and provided a safe, secure and on-site entertainment facility for the military personnel, who were training on the facility, to go at night rather than have to travel off-post, most likely by motor vehicle, to patronize an off-post bar or night club. In times of heightened awareness of drunk driving as well as increased sanctions for violators, the expansion of the clientele of the Tavern providing an extremely valuable benefit to the Government.

The final element, authority, rested clearly with the Commanding Officers of the Installation who either condoned or actively supported this expansion. By their actions, the Commanding Officers clearly had control and authority over both the facility and the ability to act as an agent. It was a Commanding Officer, not a representative from Devens RFTA CWFC, who shut down the dining facility. No representatives of the

Devens RFTA CWFC, although aware of same, ever attempted to force the Plaintiff to comply with the Contract regarding authorized personnel able to use the facility. In fact, it was not a representative of the Devens RFTA CWFC, who ultimately ordered the Plaintiff to revert to the original contract regarding authorized personnel but the Commanding Officer, Exhibit "D" to the Complaint. Based upon those actions, the Plaintiff had a reasonable expectation that the Commanding Officers of the Installation had the authority, either implicitly or explicitly, to enter into implied-in-fact contracts. The Government cannot have it both ways. It cannot choose not to enforce a contract and thereafter enter into an implied-in-fact contract when it benefits by same and then arbitrarily elect to rescind same when there may not be a benefit to the Government.

As such, the Plaintiff has asserted facts sufficient in Count II to demonstrate an implied-in-fact contract and a claim over which relief can be granted.

IV. <u>The Plaintiff Should Be Allowed To Proceed With His Claims under the Doctrine of Implied Covenant of Good Faith</u>

There is integrated into every contract an implied covenant of good faith and fair dealing. The underlying principle is that there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. <u>Eliel v. United States</u>, 18 Cl. Ct. 461, 470 (1989). See 5 WILLISTON ON

CONTRACTS, THIRD EDITION §670 (1961).

**CONCLUSION**

WHEREFORE, for the reasons cited and the pleadings submitted, it is respectfully requested that the Defendant's Motion to dismiss the Plaintiff's complaint for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief may be granted, be denied.

Respectfully submitted,
John E. McCafferty, d/b/a
Classic Catering,
By his attorney,

Mark L. Nestor, Esq.
BBO # 369440
332 Lunenburg Street
Fitchburg, MA 01420
Tel: 978.345.3544

Dated: February 20, 2004

**CERTIFICATE OF FILING**

I hereby certify that on this 20th day of February, 2004, a copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss was filed by Express Mail. Filing will also be attempted electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

I further certify that on this 20th day of February, 2004, I caused to be served by United States Mail (first class-postage prepaid) copies of the Plaintiff's "Motion for Leave to File Pleadings by Mail) addressed as follows:

Steven M. Mager, Esq.
Commercial Litigation Branch
Civil Division - Department of Justice
ATTN: Classification Unit
1100 L. St. NW, 8th Flr
Washington, DC 20530

Mark L. Nestor