# In the United States Court of Federal Claims

No. 03-2292C
Filed August 16, 2004
**TO BE PUBLISHED**

| | | |
|---|---|---|
| JOHN E. McCAFFERTY, D/B/A CLASSIC CATERING,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | * | Jurisdiction;<br>Non-Appropriated Fund Instrumentality;<br>28 U.S.C. § 2517;<br>RCFC 12(b)(1). |

**Mark L. Nestor,** Fitchburg, Massachusetts, counsel for plaintiff.

**Steven M. Mager,** United States Department of Justice, Civil Division Commercial Litigation Branch, counsel for defendant, with whom were Assistant Attorney General **Peter D. Keisler,** Director **David M. Cohen,** and Assistant Director **Kathryn A. Bleecker**. **Major Kevin Robitaille,** Department of the Army, United States Army Legal Services Agency, Of Counsel.

## OPINION AND FINAL JUDGMENT

**BRADEN,** ***Judge***

The United States Court of Appeals for the Federal Circuit recently had occasion to review an opinion issued by the Honorable Lawrence J. Block of the United States Court of Federal Claims, that our appellate court praised as presenting "an excellent discourse on the historical development of both [non-appropriated funds instrumentalities ("NAFIs")] and the NAFI doctrine[.]" *Ains, Inc.* v. *United States*, 365 F.3d 1333, 1337 (Fed. Cir. 2004) (citing *Ains*, *Inc*. v. *United States*, 56 Fed. Cl. 522 (2002)). Therein, the Federal Circuit also restated the four-element test for determining whether a federal agency is a NAFI:

> A government instrumentality is a NAFI if: (1) It does "not receive its monies by congressional appropriation[;]" (2) It derives its funding "primarily from [its] own activities, services, and product sales[;]" (3) Absent a statutory amendment, there is no situation in which appropriated funds could be used to fund the federal entity[;]

> and (4) There is "a clear expression by Congress that the agency was to be separated from general fund revenues."

*Id.* at 1342 (internal citations omitted).

For the reasons stated herein, the defendant in this case is a NAFI. Therefore, the court once again has no choice other than to dismiss plaintiff's claims. *Id.* at 1344; *see also Ains*, 56 Fed. Cl. at 544 ("Until Congress lifts sovereign immunity and allows at least some suits against these large NAFIs, what very well could be a vested right in the common circumstance cannot be vindicated in this court.").

**RELEVANT FACTS AND PROCEDURAL BACKGROUND**[1]

Plaintiff owns and operates a food service business ("Classic Catering") based in Lowell, Massachusetts. *See* Compl. ¶ 6. On October 1, 1999, RFTA-Devens awarded plaintiff a one year contract (No. NAFFE2-00-T-0001) to provide meals for stationed personnel. *Id.* at Ex. A. On December 6, 2000, the parties extended the contract for an additional four years. *Id.* at Ex. B. The first line on page one of Contract No. NAFFE2-00-T-0001 states "Solicitation, Offer, and Award (Nonappropriated Funds)." *Id.* at Ex. A. In addition, Section H-12 of the contract states that RFTA-Devens is a "non-appropriated fund instrumentality (NAFI) . . . No appropriated funds of the United States shall become due, or be paid by the contractor by reasons of this Contract. It is an integral Department of Defense (DoD) organizational entity which performs an essential Government function. It acts in its own name as a NAFI and, as a fiscal entity, maintains custody of and control over its non-appropriated funds." *Id.*

Under the terms of the contract, plaintiff had a lease on Building 623 at RFTA-Devens in which he operated "The Minuteman Tavern" ("Tavern"). *See* Compl. at ¶ 13; *see also* Compl. at Ex. A. The contract also required plaintiff to provide additional food services to the reservists training at the RFTA-Devens. *See* Compl. at ¶ 15; *see also* Compl. at Ex. A. Section C-12 of the contract provided that access to the Tavern "may be extended" to RFTA-Devens personnel, other military personnel, and their guests. See Compl. at Ex. A. The contract contained numerous provisions that outlined the parties' duties, the qualifications of employees, the Tavern's hours of operations, and insurance and liability issues. *Id.* Plaintiff was responsible for maintaining the Tavern and ensuring that it met certain levels of cleanliness. *Id.*

On March 2, 2001, plaintiff was informed that the Tavern was going to be shut down due to the unsatisfactory condition of the floors. *See* McCafferty Aff. at ¶ 37. The RFTA-Devens Chief of the Training Support Division offered plaintiff the use of another dining facility in which to serve

---

[1] The facts herein are primarily derived from: the October 3, 2003 Complaint ("Compl."); the February 10, 2004 Affidavit of Plaintiff, John E. McCafferty ("McCafferty Aff."); and the March 10, 2004 Declaration of Peter Connelly, Chief of the Training Support Division at RFTA-Devens ("Connelly Decl.").

meals. *See* Connelly Decl. ¶¶ 6-8. Plaintiff, however, declined the offer and did not serve any meals to RFTA-Devens personnel for three weeks. *See* Compl. at ¶ 30. Plaintiff claims that he lost $33,557.05 in revenue during this time. *Id.* at ¶ 34 (Count I).

On February 4, 2002, plaintiff was informed that access to the Tavern would be restricted solely to those mentioned in Section C-12 of the contract, *i.e.*, civilians would be excluded. *See* Compl. at Ex. D. Previous Commanders had allowed civilians access to the Tavern. *Id.* On February 14, 2002, the new policy was implemented. *See* McCafferty Aff. at ¶ 68. Plaintiff asserts that the drop in his customer base resulted in an additional loss of $12,000 per month, for a total of $144,000. *See* Compl. at ¶¶ 51, 55 (Count II).

In a letter dated October 30, 2002, the Contracting Officer ("CO") informed McCafferty that the contract was terminated, pursuant to Section H-9(c). *See* Compl. at Ex. E. Section H-9(c) gave either party the right to terminate the contract *without cause* as long as the party provided 120 days advanced notice in writing. *Id.* at Ex. A (emphasis added).

On October 3, 2003, plaintiff filed a complaint, together with Exhibits A-E, in the United States Court of Federal Claims seeking damages for breach of contract. On January 9, 2004, the United States ("the Government") moved to dismiss the case, pursuant to RCFC 12(b)(1) for lack of jurisdiction. In the alternative, the Government moved to dismiss pursuant to RCFC 12(b)(6), for failure to state a claim upon which relief could be granted. On March 9, 2004, plaintiff filed a response in opposition, together with John McCafferty's Affidavit and Exhibits A-E. On March 22, 2004, the Government filed a reply, together with Peter Connelly's Declaration.

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction, pursuant to the Tucker Act, over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States[.]" 28 U.S.C. § 1491(a)(1). The court's jurisdiction, however, has been defined by Congress by the extent to which sovereign immunity has been expressly waived. *See United States* v. *Testan*, 424 U.S. 392, 399 (1976); *see also United States* v. *Hopkins*, 427 U.S. 123, 125 n.2 (1976) (citing 10 U.S.C. § 4779(c), 9779(c)). Thus, the court's jurisdiction is limited to rendering judgments that must be paid out of appropriated funds. *See* 28 U.S.C. § 2517; *see also Furash & Co.* v. *United States*, 252 F.3d 1336, 1339 (Fed. Cir. 2001) (holding "absent some specific jurisdictional provision to the contrary the Court of Federal Claims lacks jurisdiction over actions in which appropriated funds cannot be used to pay any resulting judgment.").

**B. Standard of Review.**

**1. Motion to Dismiss–RCFC 12(b)(1).**

The court must grant a motion to dismiss for lack of subject matter jurisdiction when a plaintiff "can prove no set of facts in support of [the] claim which would entitle [plaintiff] to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). Although the court is required to assume non-jurisdictional factual allegations to be true, the burden of establishing subject matter jurisdiction rests with plaintiff. *See McNutt* v. *Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). When deciding a motion to dismiss concerning subject matter jurisdiction, pursuant to RCFC 12(b)(1), the court may examine relevant evidence in order to resolve any factual disputes. *See, e.g., Moyer* v. *United States*, 190 F.3d 1314, 1318 (Fed. Cir.1999); *Cedars-Sinai Med. Ctr.* v. *Watkins*, 11 F.3d 1573, 1584 (Fed. Cir.1993), *cert. denied sub nom.*, *Cedars-Sinai Med. Ctr.* v. *O'Leary*, 512 U.S. 1235 (1994).

**C. Resolution Of The Government's Motion To Dismiss.**

**1. RFTA-Devens Does Not Receive Congressional Appropriations.**

A NAFI may not receive congressional appropriations. *See Ains*, 365 F.3d at 1343-44. In this case, Army Regulation 215-7 specifically lists RFTA-Devens as a Category IV NAFI. *See* Civilian Nonappropriated Funds and Moral, Welfare, and Recreation Activities, Army Regulation 215-7, Ch. 5-2 (2001). As a Category IV NAFI, RFTA-Devens does not receive congressional appropriations, but instead is funded from Category II NAFIs and proceeds from its own activities. *Id.* at Ch. 5-1; *see also* Moral, Welfare, and Recreation Activities and Nonappropriated Fund Instrumentalities, Army Regulation 215-1, Ch. 3-1(a) (2004).

**2. RFTA-Devens Is Funded Primarily From Its Own Activities**.

A NAFI "derives its funding 'primarily from [its] own activities, services, and product sales.'" *Ains*, 365 F.3d at 1342 (quoting *Cosme Nieves* v. *Deshler*, 786 F.2d 445, 446 (1st Cir. 1986)); *see also Core Concepts of Florida, Inc.* v. *United States*, 327 F.3d 1331, 1335 (Fed. Cir. 2003). Category IV NAFIs are to be funded primarily from the proceeds of its own activities. *See* Army Regulation 215-7, Ch. 5-1. RFTA-Devens is funded from "PR [Post Restaurant] NAFI dividends [and] incidental income . . . derived internally[.]" *Id.* This is further evidenced by the contract at issue wherein McCafferty agreed to pay a 7.5% commission from the Tavern's gross sales into the Civilian Welfare Fund. *See* Compl. Ex. A at 2.

**3. RFTA-Devens Cannot Utilize Appropriated Funds Without A Statutory Amendment.**

A federal agency cannot be a NAFI if it can use appropriated funds, even if it chooses not to do so. *See United States* v. *General Elec. Corp.*, 727 F.2d 1567, 1570 (Fed. Cir. 1984) ("[T]he non-appropriated funds exclusion is limited to instances when, by law, appropriated funds not only are

not used to fund the agency, but could not be."). To best determine congressional intent, the court must first examine the agency's enabling legislation. *See Core Concepts*, 327 F.3d at 1336-37. Where the enabling legislation includes no authorization of appropriations, as is the case here, other sources such as congressional reports or agency regulations may serve as dispositive guidance of a federal agency's status as a NAFI. *Id.*

As the Federal Circuit astutely observed, "the third factor can be particularly challenging, because it is always difficult to prove a negative--here, the unavailability of appropriated funds absent a statutory amendment." *Ains*, 365 F.3d at 1344. There is no question that the RFTA-Devens is part of Moral, Welfare, and Recreation ("MWR"), which includes many non-military functions, but operates with some appropriated funds. *See* AR 215-7, Ch. 5-7 ("Although civilian MWR activities are funded with a combination of APFs [appropriated funds] and NAFs [nonappropriated funds], costs of operating most elements of the installation CWF program must be borne by NAFs."). Nevertheless, Army regulations specifically provide that RFTA-Devens is to be funded from "PR [Post Restaurant] NAFI dividends [and] incidental income . . . derived internally[.]" Army Regulation 215-7, Ch. 5-1. This is a different situation than that presented in *Convery* v. *United States*, 597 F.2d 727, 730 (Ct. Cl. 1979), where the court examined the Federal Property and Administrative Services Act, and found that: "Any Federal agency disposing of surplus property . . . (2) *may* withdraw [from the Treasury] amounts to be refunded or paid, without regard to the origin of the funds withdrawn. (emphasis added). *Id.* In *Convery*, the court determined that the use of the word "may" indicated that the defendant *could use* appropriated funds to satisfy a judgment against it. *Id.* Here, no such permissive language is applicable to RFTA-Devens and its use of appropriated funds.

**4. RFTA-Devens Operating Funds Are Separated From The General Fund.**

The fourth NAFI element is whether operating funds are separated from general federal treasury funds. *See Ains*, 365 F.3d at 1342 (stating that the final factor must establish that there is "a clear expression by Congress that the agency was to be separated from general federal revenues"); *see also Furash*, 252 F.3d at 1339 (holding that the court "must exercise jurisdiction absent a clear expression by Congress that it intended to separate the agency from general federal revenues."). The absence of an express congressional intent regarding the separation of funds is not dispositive, however, if congressional intent is clear. *See Furash*, 252 F.3d at 1340 (holding that "what matters is whether the agency's authorizing legislation makes clear that Congress intends for the agency . . . to be separated from general federal revenues."); *see also Denkler* v. *United States*, 782 F.2d 1003, 1005 (Fed. Cir. 1986) ("[A] nonappropriated fund agency [is] one where there has been a 'clear expression by Congress that the agency was to be separated from the general fund revenues[.]'"). In this case, RFTA-Devens' funds are deposited into a general account in the United States Treasury. *See* Army Regulation 215-1, Ch. 3-1 (NAFI funds "are separate from appropriated funds . . . of the U.S. Treasury. They are not commingled with [appropriated funds] and are managed separately, even when supporting a common program or activity."). This type of "revolving fund" has been held to be sufficient separation from the general federal treasury funds to satisfy the NAFI doctrine. *See Core Concepts*, 327 F.3d at 1338 (declining to find that "revolving funds . . . are appropriations"). The fact that a NAFI's funds may be intermingled with the general treasury is also

irrelevant because those funds would still have to be used to pay any judgments entered against the NAFI. *Id.*

Since RFTA-Devens satisfies all four factors of the *Ains* test, it is a NAFI and the court does not have jurisdiction to provide the relief plaintiff seeks. *See Ains*, 365 F.3d at 1344 ("Absent Congressional authorization, the Court of Federal Claims has no jurisdiction to hear claims against NAFIs."). The RFTA-Devens also is a MWR entity and is not closely affiliated with a post exchange or otherwise covered by the Contract Disputes Act. *See Pacrim Pizza Co.* v. *Pirie*, 304 F.3d 1291, 1293-94 (Fed. Cir. 2002).

**CONCLUSION**

For the foregoing reasons, the court grants the Government's January 9, 2004 motion to dismiss plaintiff's October 3, 2003 complaint, pursuant to RCFC 12(b)(1). The Clerk's Office is ordered to enter an order pursuant to this Opinion and Final Judgment.

**IT IS SO ORDERED.**

s/SUSAN G. BRADEN
Judge